```
                                       UNITED STATES DISTRICT COURT
                                       SOUTHERN DISTRICT OF FLORIDA

                                       CASE NO. 05-61909-Civ-COHN
                                       MAGISTRATE P. A. WHITE
DALE H. CLINE,                   :

       Plaintiff,                :

v.                               :     REPORT OF
                                       MAGISTRATE JUDGE
BROWARD COUNTY SHERIFF, et al.,  :

       Defendants.               :
_____
```

## I.  INTRODUCTION

Plaintiff Dale H. Cline filed this pro se civil rights action pursuant to 42 U.S.C. §1983, about jail conditions when he was a Broward County pretrial detainee. Cline is no longer incarcerated. He complains that throughout his confinement in jail facilities run by the Broward County Sheriff's Office ("BSO"), his health was put at risk when violations of an established health policy occurred. The policy dictates that only medically approved inmates (who wear green wrist bands) may handle/distribute food and water consumed by inmates. Cline alleges that numerous events compromised his health. These include incidents when a food tray was open or a deputy or unbanded inmate handled food/water; events involving lack of concern for sanitation when water jugs were filled in bathrooms or showers, or hands or food came in contact with ice inside a cooler. Violations allegedly occurred at four facilities: Broward County Stockade ("Stockade), the Main Jail ("BCMJ"), Joseph V. Conte ("JVC"), and North Broward Bureau ("NBB"). The operative pleading consists of the complaint (DE# 1), and amendments/supplements (DE#s 8, 14, 53) enumerating alleged incidents. The case is pending against two named defendants: Ken Jenne as Sheriff, and Sgt. Alfalo of the "Stockade" where most incidents allegedly occurred.

**This Cause is before the Court upon the defendants' joint motion for summary judgment (DE# 72),** claiming Alfalo is entitled to qualified immunity, because his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known (Id., p.2, ¶3), and Jenne in his official

capacity is entitled to judgment because there was no custom, policy, or procedure implemented by the Broward County Sheriff's Office that is the cause of the alleged violation of Plaintiff's constitutional rights (Id., ¶4).[1] In support, defendants filed the following exhibits: Cline's Deposition (divided into Exhibits A-1

---

[1] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interro-
> gatories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine
> issue as to any material fact, and that the moving
> party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Upon the filing of defendants' motion for summary judgment (DE# 72), the Court entered an Order Instructing Pro Se Litigant Re Response to Motion for Summary Judgment (DE# 77), informing Cline of his right, as a *pro se* litigant, to respond to the defendants' summary judgment motion. The Order also instructed him about requirements under Fed.R.Civ.P. 56 for a proper response to such a motion. The plaintiff Responded, and defendants replied, as noted *infra*.

to A-3 at DE#s 73-2, 74-2, 75-2); the Affidavit of Darren Seiger, BSO Detention Classification Manager (Ex.B at DE# 76-2) with attached "Composite Exhibit 1" consisting of copies of BSO Policies governing "Inmate Work Programs and Health and Safety Regulations;" and the Affidavit of Monique Hunsinger, Health Service Administrator for Armor Correctional Health Services, Inc., which is contracted to provide health services for inmates in BSO facilities.

Plaintiff Cline filed a Response (DE# 89, pp. 1-20) that is sworn (Id., p.21), with numerous exhibits. In addition to additional copies of defendants' Exhibits B and C, plaintiff Cline's exhibits include the following: selected grievances (Id. at pp. 23-27); a July 3, 2006 Memo between officers at JCV about food items being stored in a water cooler (Id. at p. 28); copies of Florida Administrative Code rules, from Title 64 [Department of Health], Subtitle 64E [Division of Environmental Health], pertaining to topics including food hygiene, drinking water, and state and local detention facilities (Id., pp. 29-35); and answers by NBB Inmates Damian Gaullon and Joseph Marley to Interrogatories propounded by plaintiff Cline (Id., pp. 41-50). The defendants filed a Reply (DE# 91).

## The Alleged Incidents

Cline states that he filed grievances about most incidents. His pleadings refer to each incident as a "Count." Cline indicates that facts alleged in his amendments/supplements about many of the incidents/Counts are restatements of the texts of his grievances.

For reference, the essence of each Count, and of Cline's fact allegations, is set out below, for three reasons: (1) it puts Cline's claims in context; (2) defendants' motion related details of 12 incidents, in part to show that some corrective measures were taken; and (3) it is Cline's assertion that his Counts/allegations show incidents were system wide, not isolated; corrective measures [inmate and staff reprimands] were ineffective; and incidents were continuous despite his repeated verbal and written grievances.

### DE# 8, Dated 2/10/06, filed from the "Stockade"
### (Alleging Incidents at the "Stockade")

3

**I**   **November 4, 2005.** Food served by deputy, not a banded inmate.
(Grievance determined to be "founded;" deputy was counseled to use banded inmates from now on).

**II**   **November 11, 2005.** Cline's meal tray not intact.
(Cline's food tray cover had a hole and the spoon was missing. He protested, and then became angry when a deputy to whom he complained was dismissive (telling him to sit down, and that he "didn't want to hear it"). Cline threw his food tray at the wall, was sent to a confinement cell, and, there, received a replacement food tray).

**III**   **December 5, 2005.** Unbanded inmate opened/filled water cooler.
(While Cline was confronting a Bravo Shift Deputy about his earlier grievance complaining of 9 alleged civil rights violations, including "illegal strip searches" and "unbanded inmates handling food and water," the sergeant denied that this was happening on his shift. While Cline was getting a grievance form to write up the deputy for uttering that denial, Cline turned and saw that an unbanded inmate was in the process of opening and refilling the water cooler. When Cline complained to the Deputy about this, he responded by asking, "Did he have gloves on?" Cline then proceeded to submit a 2-part grievance, first complaining that the deputy denied occurrence of earlier incidents on his shift, and complaining second about the December 5 water cooler incident and the deputy's comment. The Response to Cline's grievance determined "Part 1" to be "unfounded;" and stated "Part 2" was "founded, corrected, and resolved."

**IV**   **December 9, 2005.** Unbanded inmate refilled water jug.
(Cline states he wrote a grievance complaining that although "every one of my past grievances have been 'founded and resolved,'" another unbanded inmate incident had just occurred, about which he complained to Deputy Daniels on Alpha Shift. The grievance response stated that Daniels was "counseled" by Sgt. Lisanti, and Daniels stated that he understood, and that "this will not re-occur").

**V**   **December 17, 2005.** Unbanded/ungloved inmate filled a water cooler.

**VI**   **January 14, 2006.** Unbanded inmate filled a water cooler.
(When Cline grieved about this matter, the Response stated that the "Grievance is unfounded," and noted that: Deputy Blacio was not on the unit during the incident; when Cline told him it occurred, Blacio showed him photo arrays of inmates but Cline could not identify the offending inmate; and Blacio relies only on banded inmates, and does not authorize unbanded inmates to open the water jug).

**VII**   **January 16, 2006.** Unbanded inmate filled water cooler.
(Unbanded inmate put on gloves, dug through garbage, opened water container and refilled it in the bathroom; and then used it as a weight for "curl exercises." Cline filed Grievance Appeal, complaining that in the initial response the only "correction noted was not to exercise with the water").

**VIII**   **January 26, 2006.** Unbanded inmate contaminated water/ice.
(Unbanded/ungloved inmate put hands inside water coolers when transferring ice from one container to another. Deputy "did resolve the situation" when Cline complained to him).

**IX**   **January 31, 2006.** Unbanded inmate filled water jug in bathroom.

        (Cline could not complain to deputy Gorratti, who was not present on the unit. Another deputy commented to Cline, "you can't be blamed if you are not in there").

**X**    **February 4, 2006. New unbanded inmate filled water jug in bathroom.**
(Sgt. Mack counseled newly arrived inmate; a deputy turned to Cline and said "once in a while we get an inmate like you who likes to complain;" another told Cline, "If I stay out of the cell, I can't be blamed;" and a third suggested taking the inmates' cold water away, since it's a privilege).

**XI**   **February 6, 2006. Inmate filled water cooler in bathroom.**
(Cline awoke at 5:30 a.m. to sound of water. The inmate from Bunk 20 was filling the water cooler in the bathroom, when the housing deputy was not present).

**DE# 14, Dated 4/13/06, Filed from JVC**
**(Alleging Incidents at "JVC" and "BCMJ")**

**XIII & XIV**   **Unspecified Dates.**   **Food/water incidents (two incidents?).**
("This facility [**presumably JVC**] is knowingly allowing unbanded inmates to handle and serve open food and water").

**XV**   **April 11, 2006. Unbanded Inmate filled water cooler in shower.**
(During Charlie Shift feeding at the **Main Jail 4-2A**, the female deputy in charge allowed an unbanded inmate to take the water cooler into the shower stall, fill it with water, and serve it to the general inmate population).

**DE# 53, Dated 9/20/06, Filed from "NBB"**
**(Alleging Incident at "NBB")**

**XVIII**  **September 6, 2006. Unbanded Inmate filled water cooler in shower.**
(On Charlie Shift at NBB, as an unbanded inmate filled a water cooler in the shower, Cline brought the matter to the attention of a female deputy, who orally responded, "I know. It's OK. They do it all the time." When Cline filed a grievance about this 9/6 Charlie Shift incident he noted therein that, in response to a prior grievance, Bravo Shift staff had been "counseled to monitor the water container." Cline further included his congratulations/thanks in his grievance to the Charlie Shift Deputy, stating: "This just keeps better and better," and further stating: "Keep Up The Good Work Sgt. You have pretty well Sealed my lawsuit with a Kiss -- Deliberate Indifference -- Dale H. Cline v. Broward Sheriff's Office 05-61909-Civ-Cohn/White ➜ You are putting my health at Risk ➜ Knowingly."

**II.   DISCUSSION**

     Initially, it is noted that the "Broward County Sheriff's Office," named in the style of the pleadings, and listed on the CM/ECF docket as a current party, is not a legal entity subject to suit under §1983. In Florida, a county Sheriff in his/her official capacity is a proper defendant, rather than the County Sheriff's Department/Office. Dean v. Barber, 951 F.2d 1210, 1214 (11 Cir.

5

1992); *accord* Bethel v. Escambia County Sheriff's Office, No. 3:05 CV 376 MCR/MD, 2006 WL 839184, at *1, (N.D.Fla. March 30, 2006).[2] Jenne, as Sheriff, and Sgt. Alfalo, are therefore proper parties.

The Eighth Amendment applied through the Fourteenth Amendment prohibits the infliction of cruel and unusual punishment and thereby places limitations on the conditions in which the State may confine those convicted of crimes. Robinson v. California, 370 U.S. 660 (1962); Rhodes v. Chapman, 452 U.S. 337 (1981); Hamm v. Dekalb County, 774 F.2d 1567 (11 Cir. 1985). "Sanitary conditions" count as one of various "basic human needs" which jails/prisons are expected to provide, Rhodes, supra, 452 U.S. at 347; Hamm, supra, 774 F.2d at 1571-72. Where, as in this case, an inmate/plaintiff was a pretrial detainee when alleged deprivations occurred, his claims, which would lie under the Eighth Amendment prohibition against cruel and unusual punishment if he had been a convicted prisoner, arise instead from the Due Process Clause of the Fourteenth Amendment. The minimum standard of ensuring pretrial detainees with the "basic necessities" as allowed by the Due Process Clause is the same, and there is no appreciable difference in analysis under the two amendments. See Bell v. Wolfish, 411 U.S. 520, 535 (1979); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11 Cir. 1996); Hamm, supra, 774 F.2d at 1574.

For the plaintiff to prevail, first, there must have been, *objectively*, a "sufficiently serious" deprivation, Hudson v. McMillian, 503 U.S. 1, 8 (1992); Farmer v. Brennan, 511 U.S. 825,

---

[2] The capacity to be sued in federal court is governed by law of the state where the court is located, Dean, supra, 951 F.2d at 1214 (citing Fed.R.Civ.P. 17(b)). Under Florida law there are constitutionally created political subdivisions [counties] and separate constitutional officers [including Sheriffs], Fla.Const.Art.VIII; §§1(a) and (d); but no provision is made for a "Sheriff's Office" as a legal entity. The law provides that the county sheriff is elected (Id. at §1(d)); and Fla.Stat. §30.07 provides that Sheriffs may appoint deputies to act under them who shall have the same power as the Sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible.

834 (1994); and second, there must have been, *subjectively,* on the part of the named defendant, a state of mind which constituted deliberate indifference. For the first prong the challenged condition must be "extreme," <u>Hudson</u>, <u>supra</u> at 9, and the inmate must show that he "is incarcerated under conditions posing a substantial risk of serious harm," <u>Farmer</u>, <u>supra,</u> at 834 (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)). For the second prong, the inmate must show that the defendant knew of and disregarded an excessive risk to inmate health or safety, which requires that the official must <u>both</u> have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the official must have drawn the inference. <u>Farmer</u>, <u>supra</u>, at 837. <u>See</u> <u>also</u> <u>Farmer</u>, at 847 (holding official may be found liable "only if" he disregards "substantial risk of serious harm"..."by failing to take reasonable measures to abate it").

Regarding food, the constitution requires that prison officials serve prisoners "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10 Cir. 1980). <u>See</u> <u>Hamm</u>, <u>supra</u>, at 1575 (noting the constitution requires "reasonably adequate food"). Courts in food-related cases have reached differing results, depending on factors including frequency of incidents, and whether evidence showed merely speculative or possible contamination, as opposed to showing a significant injury such as food poisoning or malnutrition, due to alleged use of spoiled products, improper food handling or storage, or unsafe/unsanitary kitchen conditions. <u>See</u> <u>Nixson v. Batson</u>, No.3:06cv42/RV/MD, 2006 WL. 3306888, at \*\*4-6 (N.D.Fla, Nov.13, 2006) (citing cases). In cases involving alleged failure to implement adequate health screening procedures for inmate food handlers, or use of untested inmate food handlers, courts have held that fear of infection does not suffice for entitlement to compensation, but that under appropriate circumstances

7

injunctive relief may nonetheless be appropriate. See Martin v. Vaughn, No. CIV. A. 92-3828, 1995 WL 458977, at **1-2 (E.D.Pa., May 30, 1995) (determining that inmate plaintiffs failed to properly allege an "actual injury"/"injury in fact," and holding their "fear of contracting a disease from mere exposure does not constitute an actual injury"); High v. Doria, No. 97 C. 0184, 1997 WL 733925, at **2-5 (N.D.Ill., Nov. 14, 1997) (citing Helling v. McKinney, supra, 509 U.S. at 33) (agreeing with defendant that "[the plaintiff] High is not entitled to compensation for his fear of infection," but noting that "this does not necessarily doom his complaint" because "[i]f there is a genuine threat to inmate safety, the Court could order injunctive relief even though [plaintiff] has not yet suffered any injury entitling him to damages").

The Court in this case previously ruled that, for purposes of injunctive relief, "neither the Objective prong nor the Subjective prong requires a showing of actual current symptoms." (See Order Sustaining Plaintiff's Objections to Report of Magistrate Judge, DE# 7, at p.3) (quoting Helling, supra, 509 U.S. at 33) ("'it would,' indeed 'be odd to deny an injunction to inmates who plaintiff proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.'").

Plaintiff Cline is no longer incarcerated. Since an inmate's release from jail or prison moots his claims for extraordinary relief (such as declaratory judgment or injunctive relief), Spears v. Thigpen, 846 F.2d 1327 (11 Cir. 1988); Cotterall v. Paul, 755 F.2d 777 (11 Cir. 1985), Cline's request for injunctive relief has been rendered moot.[3] Since he also seeks monetary relief, the analysis does not end with the mooting of his request for extraordinary relief. In DE# 1, Cline requested $100,000.00 in punitive damages.

---

[3] At DE# 1, Cline's prayer for relief included a request for the Court to order the BSO to stop the practice of using/allowing non-medically cleared inmates to handle "open food" and "water containers".

He also requested "whatever this Court deems fair in light of the severity of the deliberate indifference" (DE# 1, p.3), which can reasonably be viewed as a request for nominal damages, see Calhoun v. DeTella, 319 F.3d 936, 943 (7 Cir. 2003). *Cf*. Boxer X v. Donald, 169 Fed.Appx. 555, 558-559 (11 Cir. 2006) (finding in *dicta* that nominal damages can be available a First Amendment claim despite the lack of "physical injury;" and also finding that, despite lack of physical injury, nominal damages were available because the prisoner, who sought compensatory damages, had also requested "any other relief the court deem[s] appropriate").

Title 42 U.S.C., Section §1997e(e), as part of the Prison Litigation Reform Act of 1995 ("PLRA"), provides that no federal civil action may be brought by a prisoner for mental and emotional injury suffered while in custody without a prior showing of physical injury. For purposes of §1997e(e) the prisoner must show a physical injury which is more than *de minimis*, but it need not be significant, Harris v. Garner, 190 F.3d 1279, 1286-87 (11 Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11 Cir. 1999), *opinion reinstated in pertinent part en bank,* 216 F.3d 970, 984-85 (11 Cir. 2000) (en banc), and the Courts have held that absent such a showing the prisoner/plaintiff may not recover compensatory or punitive damages for mental or emotional injury. See Slicker v. Jackson, 215 F.3d 1225, 1229 (11 Cir. 2000) (actual injuries required for compensatory damages); Osterback v. Ingram, No. 3:96CV580/LAC/SMN, 2000 WL 297840 at *10, 13 Fla. L. Weekly D 133 (N.D.Fla.2000), *aff'd.* 263 F.3d 169 (11 Cir. 2001) (Table), *cert. denied*, 536 U.S. 906 (2002) (without more than a *de minimis* injury, compensatory or punitive damages not recoverable).

Careful review of the record, including Cline's pleadings and exhibits and the defendants' exhibits, reveals that it is devoid of evidence that Cline suffered any illness or other physical injury as a result of any of the incidents on which the lawsuit is based. While compensatory damages (which it appears Cline did not request)

9

and punitive damages (which Cline did request) may be barred under §1997e(e), this does not foreclose the possibility that Cline could be entitled to nominal damages for a constitutional deprivation, even if there are no compensable damages. See Carey v. Piphus, 435 U.S. 247, 266 (1978); Boxer X v. Donald, supra, 169 Fed.Appx. at 558-59; Slicker v. Jackson, supra, 215 F.3d at 1231.

It is well established that there can be no governmental liability against a defendant like Sheriff Jenne, unless a plaintiff such as Cline identifies a custom, policy, or practice that caused the alleged violation. See: Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997); Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978); McDowell v. Brown, 392 F.3d 1283, 1289-90 (11 Cir. 2004). The plaintiff, however, cannot rely on *respondeat superior,* Monell, supra, 436 U.S. at 692, and therefore defendant Jenne in his official capacity as sheriff cannot merely be held vicariously liable and incur §1983 liability for acts of subordinates. See Id., at 694. The requirement that a custom or policy must have caused the alleged deprivation, prevents the imposition of liability based on a random act or isolated incident, Brown, supra, 520 U.S. at 403-04; Wayne v. Jarvis, 197 F.3d 1098, 1105-06 (11 Cir. 1999). A custom or policy, however, need not be written. The Eleventh Circuit has defined a custom as a "practice that is so settled and permanent that it takes on the force of law," Wayne v. Jarvis, supra, 197 F.3d at 1105 (quoting Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11 Cir. 1997)); and for a plaintiff to demonstrate its existence it is "generally necessary to show a persistent and wide-spread practice." Id.

In this case, the defendant Jenne, in his official capacity as Sheriff, asserts he is entitled to summary judgment because there was no custom, policy or procedure that was the cause of the alleged violations of Cline's constitutional rights. As supporting evidence, Jenne offers Work Program and Health and Safety Regulations, (DE# 76-2, Composite Ex.1), and Darren Seiger's Affidavit

10

(DE# 76-2, Ex.B). Seiger states that there is no custom, policy, practice, or procedure that allows or condones BSO detention deputies to knowingly place the inmates' health and safety at risk, or that allows inmates known to have or suspected to carry communicable disease to handle food and water. Seiger further states that medically cleared inmates work in health and food services, and that they are examined daily by food service staff for any open wounds, sores, or skin infections. (Id., Ex. B). Only screened inmates wearing Green Wrist Bands may work in specialized areas, such as food services (preparation and handling), the infirmary, etc. (Id., Ex. 1, Inmate Work Program Policy, 7.23). In her Affidavit (DE# 76-3, Ex. C) Hunsinger states that pursuant to Armor Health Services Policy and Procedure B-03-2 (see Id. at Ex.1), inmates who are allowed to work in food service areas are screened by medical staff for history of infectious disease, chronic illnesses, or current health problems, and if an inmate has a disease that can be transmitted through food or utensils, the inmate is not cleared to work in food service areas.

Here, it is not enough to simply state that written policy contemplated that all inmate food and medical workers must be medically screened and must wear green wrist bands, and to state that those assigned to handle food/water were checked daily for outward sighs of illness. Although some incidents apparently occurred during meal distribution, suggesting possible use of unscreened, unbanded inmates in lieu of inmates approved for the Work Program, in many other incidents it appears that the alleged "violations" were instances of inmate on units engaging in self-help to refill water containers in unsanitary ways. The essence of the operative complaint is that persons who were not medically screened were allowed to touch food or water, and that even when unit staff repeated were advised through inmate grievances, the incidents continued.

Earlier in this matter (see DE# 86, "Order Sustaining Plaintiff's Objections; Order Granting Motion to Add Count [XVIII]"),

the Court stated: "In this case, the language contained in the grievance attached to the proposed count indicates that the use of unbanded inmates to handle water coolers is a well-settled practice accepted by the Broward Sheriff's Department." Id., at p.3.  This, and the numerosity of other alleged incidents, considered at summary judgment along Cline's sworn Response stating that food/water incidents experienced and described by him were routine [frequent] and system-wide [occurring at all facilities where he was held], leads to a conclusion that it cannot be said that tolerance of such events did not take on proportions of a settled, unwritten policy.

Cline's allegations, grievances, and sworn response, stating that the inmates involved in the events he complained of did not have green wrist bands, is sufficient to show that they were not medically screened. There is no evidence to show that the inmates involved did not have communicable diseases, and it therefore cannot be said that their repeated, apparently often bare-handed handling of food and/or water destined for Cline's consumption did not pose a serious risk of harm to him, thereby depriving him of his right to "basis human needs" including sanitary conditions and food that does not pose a health risk. See Rhodes, Hamm, and Ramos, supra. As for the official capacity claim against Sheriff Jenne, there are genuine issues of material fact. Although availability of monetary relief to Cline may be limited by the absence of a showing of an actual injury, if he were ultimately to prevail at trial, he might possibly be entitled to an award of nominal damages. See Carey, and Slicker, supra. As to Sheriff Jenne, in his official capacity, the defendants' joint motion should be denied.

As for defendant Sgt. Alfalo, who claims that he is entitled to qualified immunity, the result is different. Qualified immunity, under appropriate circumstances, serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Foy v. Holston, 94 F.3d 1528 (11 Cir. 1996). It is apparent

12

that all times Alfalo was performing discretionary functions. Once he invoked the affirmative defense of qualified immunity, the burden shifted to the plaintiff to show that Alfalo's actions violated his clearly established federal statutory or constitutional rights, Foy, supra, at 1532, "of which a reasonable person would have known," Smith v. Mattox, 127 F.3d 1416, 1419 (11 Cir. 1997)(quoting Harlow, supra, 457 U.S. at 818)). Careful review of Cline's pleadings fails to reveal allegations or evidence of involvement by Alfalo in repeated events. As alleged by Cline, incidents at the Stockade where Alfalo worked are claimed to have occurred on all shifts, and to have involved various staff members. Cline's pleadings and evidence do not establish that apart from being able to react to any incident if it occurred on his watch in his presence, or being able to answer any grievance about it, that Alfalo any power or authority. Nothing suggest he could make policy or to institute some institution wide or system wide change that might have stemmed the repeated occurrence of incidents. The record does not even establish that Alfalo was aware of all the alleged incidents at the Stockade. Alfalo cannot be held vicariously liable for alleged deprivations caused by others of which he was unaware, or over which he had no control. It is therefore apparent that he is entitled to qualified immunity, and that, as to him the defendants' motion for summary judgment should be granted.

### III. CONCLUSION

It is therefore recommended that: 1) the "Broward County Sheriff's Office" be dismissed as a party, pursuant to 28 U.S.C. §1915(e)(2)(B)(ii); and 2) the defendants' joint motion for summary judgment (DE# 72) be granted, in part, as to Sgt. Alfalo, and denied, in part, as to the defendant Sheriff Jenne in his official capacity.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: July 9th 2007.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Dale H. Cline, Pro Se
      P.O. Box 415372
      Miami Beach, FL 33141


      Adriana M. Jisa, Esquire
      Purdy, Jolly, Giuffreda & Barranco, P.A.
      2455 East Sunrise Blvd., Suite 1216
      Fort Lauderdale, FL 33304